LOUISVILLE, NEW ALBANY AND CHICAGO RAILROAD
COMPANY *v.* BARNES.

[No. 1,852.   Filed October 21, 1896.]

PLEADING.— *Complaint.— Contract.— Consideration.—* A complaint, based upon an oral contract which does not express or import a consideration, should specially allege what the consideration was.

EVIDENCE.—*Pleading and Proof.—Variance.*—Evidence that defendant's superintendent, several weeks after plaintiff was injured while in defendant's employ, made a special contract with plaintiff that in consideration of the latter's releasing any claim for damages, defendant would pay him his wages during the time he was disabled, does not sustain a complaint on common count for wages.

From the Clark Circuit Court. *Reversed.*

*E. C. Field, W. S. Kinnan* and *M. Z. Stannard,* for appellants.

*C. L. Jewett* and *H. E. Jewett,* for appellee.

REINHARD, J.—The appellee's complaint alleges that "the defendant is indebted to the plaintiff in the sum of $118.00 as wages from the 1st day of March, 1889, to the 22d day of April, 1889, which the defendant promised and agreed to pay to the plaintiff with interest thereon" from the date last named. No bill of particulars was filed with the complaint. The pleading does not disclose whether the contract sued on was executory or executed. It may be true that the appellant promised and agreed to pay the appellee $118.00 for wages during the period named, but that no services have ever been actually rendered by the appellee, and if so there could be no recovery, and the averment that the appellant was indebted for the sum would be but a legal conclusion. Webster defines "wages" as "compensation given to a hired person for services." The averment might, therefore, without a change of meaning be made to read that "the defendant is indebted to the plaintiff in the sum of $118.00 as compensation for services which the plaintiff had been hired by the defendant to perform." But this would not make the averment any stronger for it would still fail to show that the services had been performed. If they had not been performed there would be no consideration for the promise to pay. Every contract in order to be valid, must stand upon a sufficient or valid consideration, and, as a general rule, the complaint declaring upon such contract must aver, and the evidence must show such consideration. Of course where a written contract is relied upon which discloses the consideration, or an oral one which imports it, it will not be necessary to aver the consideration more specifically in order to render the complaint sufficient. But if this is not the case the consideration must be pleaded or the complaint will not be sufficient. *Leach* v. *Rhodes*, 49 Ind. 291; *Nichols* v. *Now-*

*ling*, 82 Ind. 488; *Higham* v. *Harris*, 108 Ind. 246; *Plunkett* v. *Black*, 117 Ind. 14.

Assuming, however, that the complaint discloses a valid cause of action, we pass to the consideration of the alleged error of the overruling of the appellant's motion for a new trial.

One of the grounds assigned for a new trial is the insufficiency of the evidence to sustain the verdict.

The verdict is a special verdict and follows the theory of the complaint that the appellant is indebted to the appellee for wages as a blacksmith.

The evidence shows without contradiction that the appellee prior to the time covered by the complaint and subsequent thereto was employed by the appellant as a blacksmith in its shops, and that his wages was twenty-six cents per hour, ten hours being considered a day's work.

About the 1st day of March, 1889, the appellee received a personal injury, while in appellant's service, which disabled him for work during the period covered by the complaint, except that he worked one day during that period. The appellee testified that when he was injured he made an agreement with Mr. Watkeys, the superintendent of the work in which the appellee had been engaged, that if he would not sue the company, and would sign a release for any claim he might have against it for damages on account of said injury, the company would pay him his regular wages. He testified in part as follows: "He told me the company would pay me the damages, or rather they would allow me my wages just the same as I was paid when at work, my regular wages, twenty-six cents an hour, during the period I was laid up, which was from the 1st day of March, until the 22d day of April, 1889. When I made this agreement with Mr. Watkeys he said I would be kept on the pay rolls of the company

and be allowed my regular wages if I would not sue the company and sign the release. That is the reason I did not sue the company on account of my injuries. I made this agreement with Mr. Watkeys about a month before I went back to work."

Assuming, without deciding, that Watkeys, by virtue of his position as superintendent in the appellant's service, had sufficient authority to enter into such an agreement with appellee and thereby bind the appellant, we think it is apparent that this is not the contract declared upon in the complaint. If the complaint can be held sufficient at all, it must be on the theory that it declares upon the common count for services rendered the appellant. The case made by the evidence establishes no such indebtedness, but discloses a special contract to the effect that in consideration of appellee's releasing the appellant from the payment of any damages the appellant would pay him at the rate of $2.60 per day during the time he was disabled, which, appellee says, was from the 1st day of March until the 22d day of April, with the exception of one day, during which he attempted to work, but found he was not able to do so.

There is, therefore, a total failure of proof as to the services counted upon in the complaint, unless it can be said that appellant owes the appellee for the one day's services during which he attempted to work. Had the appellee shown that the appellant owed him for the value of a horse sold and delivered to it, the variance could not have been more complete.

The rule has been so frequently declared by the courts of this State that the plaintiff can only recover according to the allegations of his complaint that it seems fruitless to cite authorities in support thereof. See, however, *Riley* v *Walker*, 6 Ind. App. 622; *Thomas* v. *Dale*, 86 Ind. 435.

Appellee's learned counsel insist, however, that the fact that appellee continued in the service of the appellant as blacksmith, even though he performed little or no work, during the period of his disability, supports the theory of the complaint that appellant is indebted to him for wages. It is urged that if the superintendent continued to carry him on the pay rolls, the latter was in the scope of his authority to hire and discharge hands, and so long as he continued to retain the appellee in the appellant's service, the liability for wages continues.

There is, however, no evidence that appellee simply continued to remain in appellant's service and was carried on the pay rolls. The appellee testified that he did not know whether his name was on the pay rolls or not, although he says Watkeys agreed to keep it there. His own evidence shows that he made the agreement with Watkeys about a month before he went back to work for the company, which according to the dates given, was about the 22d day of March, 1889, which shows that the agreement was made some twenty-two days after he was injured. It is not claimed that during this period of twenty-two days he continued in the services of the appellant, unless the effect of the agreement was to operate retroactively and relate back to the time between the receiving of the injury and the making of the agreement. It would be an anomaly to hold that this was a continuation in the service. From whatever view we may look at this agreement nothing can be made of it but a special contract that in consideration of the release the appellee was to receive a certain amount of money,—an amount equaling the wages which he would have earned during the period of his disability. It is the same as if Watkeys had agreed that the company would pay him $118.00 for the release. Whether he

would be entitled to recover in an action on the special contract it is not necessary to decide, as that would involve an examination of the further question whether Watkeys was authorized to bind the appellant by such a contract, and if not, whether the appellant would still be liable in an action *ex delicto* for the damages incurred by appellee.

If it could be held, however, that in any event the appellant is liable for the one day's service rendered by him during the period of his disability, then we think the verdict is largely excessive, and as this was also assigned as a cause for a new trial, the motion should have been sustained on that ground.

Our conclusions is that there was error in the overruling of the motion for a new trial.

Judgment reversed, with direction to sustain the appellant's motion for a new trial, and to grant leave to the parties to amend their pleadings, if asked for.